**SO ORDERED.**

**SIGNED this 19 day of December, 2012.**

_J. Rich Leonard_
**J. Rich Leonard**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:

**STEPHEN CHORMAN AND
SUSAN P. CHORMAN,**

     **DEBTORS.**

**CASE NO.  11-06426-8-JRL**

**CHAPTER 7**

---

**JAMES M. BRANNAN AND
LINDA H. BRANNAN,**

     **PLAINTIFFS,**

     **v.**

**STEPHEN CHORMAN AND
SUSAN P. CHORMAN,**

     **DEFENDANTS.**

**ADVERSARY PROCEEDING
NO. 12-00015-8-JRL**

---

<u>**ORDER**</u>

     This matter came before the court on the motion for summary judgment of Susan P.

Chorman ("female debtor") on the complaint filed by James M. Brannan and Linda H. Brannan

(collectively "plaintiffs") in the pending adversary proceeding against Stephen Chorman ("male

debtor") and the female debtor (collectively "debtors" or "defendants").  A hearing was held in

-1-

Raleigh, North Carolina on December 13, 2012.

## BACKGROUND

On April 27, 2007, the male debtor entered into a contract with the plaintiffs whereby Mid-Carolina Construction ("Mid-Carolina") agreed to construct an addition to the plaintiffs' residence located at 3012 Dunkirk Drive, Raleigh, North Carolina ("plaintiffs' residence"). During the preliminary discussions with the plaintiffs, the male debtor led them to believe that Mid-Carolina held a general contractor's license and was qualified to perform the requested services on the plaintiffs' residence. Additionally, the male debtor also indicated to the plaintiffs that the addition would be completed by Thanksgiving of 2007. As the Thanksgiving deadline approached and passed, the male debtor failed to complete the project despite receiving approximately $148,319.00 from the plaintiffs between April 27, 2007 and August 3, 2007.[1]

In December 2007, the plaintiffs first discovered that neither the male debtor nor Mid-Carolina were licensed by the North Carolina Licensing Board for General Contractors ("Board"). The plaintiffs learned that the male debtor had never held a valid license and had been enjoined from practicing general contracting in North Carolina by the Superior Court of Wake County, North Carolina for engaging in the unauthorized practice of general contracting on multiple prior occasions.[2] On March 5, 2007, the Superior Court of Wake County, North

---

[1]The work actually completed by the male debtor was not in compliance with the building plans, which called for the replacement of the horizontal I-beam to which the addition would be built.

[2]On August 7, 2006, the Board filed a motion seeking an order requiring the male debtor to appear and show cause, if any, why he should not be held in criminal or civil contempt for failing to comply with prior court orders prohibiting him from further practice of general contracting in North Carolina. The motion outlines three instances where the male debtor or one of his alter ego entities engaged in the unauthorized practice of general contracting, the second

Carolina entered an order holding the male debtor in contempt for violating a prior order that prohibited him from further practice of general contracting without a license.  The court imposed a sentence of thirty (30) days, which was suspended due to mitigating circumstances; however, the judgment stated that the sentence would be activated in the event that the male debtor engaged in further practice of general contracting without a license.

The plaintiffs commenced a civil action against both debtors and Mid-Carolina on January 24, 2008, in the Superior Court of Wake County, North Carolina, seeking damages for fraud, unfair and deceptive trade practices, breach of contract and civil conspiracy.   The summons and *alias pluries* summonses and a copy of the complaint were served on the debtors and Mid-Carolina on January 31, 2008.  After the debtors and Mid-Carolina failed to answer the complaint, a default judgment was entered on May 22, 2008, awarding the plaintiffs damages in the amount of $474,474.00 plus interest at the rate of eight percent (8%) and attorney's fees in the amount of $3,070.50, with the costs of the action taxed against the debtors and Mid-Carolina.

On March 6, 2009, the Superior Court of Wake County, North Carolina issued an order requiring the male debtor to appear on May 18, 2009, and show cause, if any, why he should not

---

and third of which occurred after he was explicitly enjoined from further practice by the Board. The first incident was the subject of a complaint filed by the Board on August 21, 2001 against Stephen Chorman D/B/A C&W Construction and resolved by consent order on November 14, 2001, which prohibited him from further practice until he was issued a license by the Board.  The second incident, arose from a complaint filed by the Board on September 8, 2003, after it discovered that the male debtor, as the sole owner of Eagle Home Improvements, Inc., was engaged in the unauthorized practice of general contracting.  On January 2, 2004, the male debtor signed a consent order enjoining Eagle Home Improvements, Inc. ("Eagle") from further practice in North Carolina unless and until Eagle is issued a license by the Board.  The final incident occurred on January 23, 2005, where the unlicensed male debtor, doing business as Fairclough Construction and Painting, contracted with Gary and Judy Skinner to build an addition and deck on their Durham, North Carolina home for $33,720.00.

be held in criminal or civil contempt for performing unlicensed general contracting services for the plaintiffs in direct violation of the prior court orders prohibiting him from such further unlicensed practice.  On May 19, 2009, Wake County Superior Court Judge Ronald L. Stephens found that the male debtor's undertaking of the construction project for the plaintiffs amounted to willful disobedience of the court's November 14, 2001 and March 5, 2007.  The male debtor was found guilty of civil contempt and the thirty (30) day sentence imposed in the March 5, 2007 order was activated.

The debtors filed a joint voluntary petition for relief under chapter 7 of the Bankruptcy Code on August 22, 2011.  On January 18, 2012, the plaintiffs commenced the above-captioned adversary proceeding, seeking to prevent the dischargeability of the debt incurred by the debtors pursuant to 11 U.S.C. § 523(a)(2), (4) and (6).  On February 28, 2012, the debtors filed their answer to the complaint, denying the allegations contained therein and requesting the court dismiss the adversary proceeding and grant the debtors a discharge.  On July 20, 2012, the female debtor filed the motion for summary judgment currently before the court, seeking that the adversary proceeding be dismissed as to the female debtor.  Specifically, the female debtor contends that summary judgment in her favor is appropriate because there is no genuine issue of material fact that she had no active role in the male debtor's construction and remodeling business nor did she have any contact with or participate in the work performed by the male debtor for the plaintiffs.  In the affidavit attached to her motion, the female debtor declares, under penalty of perjury, that other than making an occasional phone call or menial task at the male debtor's request, she had no active role in the male debtor's business nor did she participate in any of the work performed for the plaintiffs.

-4-

**DISCUSSION**

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable in bankruptcy proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056. The "plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In making this determination, conflicts are resolved by viewing all facts and all reasonable inferences in the light most favorable to the nonmoving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). If there are no genuine issues of material fact and the issue is a matter of law, a ruling on a motion for summary judgment is appropriate; however, summary judgment is not appropriate where there are genuine issues of material fact. Id.

Section 523(a) of the Bankruptcy Code, listing the exceptions to discharge, provides that a debtor will not receive a discharge from any debt –

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by –
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;
>> (B) use of a statement in writing--
>>> (i) that is materially false;
>>> (ii) respecting the debtor's or an insider's financial condition;
>>> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>>> (iv) that the debtor caused to be made or published with intent to

-5-

deceive; . . . .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; . . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity . . . .

11 U.S.C. § 523(a)(2), (4), (6); see Cohen v. de la Cruz, 523 U.S. 213, 215, 218 (1998) (holding that "§523(a)(2)(A) prevents the discharge of all liability arising from fraud[,]" which includes "debts 'resulting from' or traceable to' fraud." (citation omitted)).  The Fourth Circuit has recognized as "unlikely that Congress . . . would have favored the interest in giving perpetrators of fraud a fresh start over the interest in protecting victims of fraud." Pleasants v. Kendrick, 219 F.3d 372, 375 (4th Cir. 2000) (citing Cohen, 523 U.S. at 223); Nunnery v. Rountree (In re Rountree), 478 F.3d 215, 219-20 (4th Cir. 2007) ("[S]ubsection (a)(6)[ of § 523], which excepts from discharge a debt incurred as a result of the debtor's "willful and malicious injury" to the creditor or her property[,]" provides protection from the tortious conduct of debtors).  "Congress intended § 523(a)(2) to protect creditors who were tricked by debtors into loaning them money or giving them property, services, or credit through fraudulent means." Roundtree, 478 F.3d at 219-20.

Based on its review of the pleadings, interrogatories, the female debtor's deposition testimony and the other materials submitted by the parties, the court finds that there is a genuine issue of material fact concerning the female debtor's involvement with the male debtor's ongoing scheme to engage in the unauthorized practice of general contracting and defraud the plaintiffs.  Thus, she is not entitled to judgment as a matter of law.

Specifically, the record reveals that the female debtor may have willingly engaged or

acquiescenced in conduct that would render the judgment awarded to the plaintiffs nondischargeable pursuant to § 523(a).  As her own deposition testimony illustrates, the female debtor was aware of the male debtor's pattern of unauthorized practice of general contracting dating back to 2001.  The male debtor's misrepresentations, whether intentional or negligent, to the plaintiffs that he was licensed to perform general contracting services in North Carolina was fraudulent and in direct violation of previous orders enjoining him from further practice.  See Pleasants, 219 F.3d at 375-76 (noting, as evidence of the debtor's ongoing fraudulent scheme, his misrepresenting his graduation from the architectural college at the University of Virginia, introducing himself as an architect and/or failing to correct the improper introduction, and the debtor's company letterhead, business cards, advertisements, signs and phone book incorrectly designated him as an architect).

Contrary to the female debtor's argument, her involvement is disputed, as her deposition testimony is contrary to her discovery responses and bank account information subpoenaed from SunTrust Bank by the plaintiffs.  Information on the bank account, named "Susan Chorman DBA Mid-Carolina Construction" ("Susan Chorman DBA Account"), contained copies of numerous checks signed by or made payable to the female debtor between January 1, 2007 and March 31, 2008.[3]  Neither debtor disclosed the existence of the Susan Chorman DBA Account in their discovery responses and, in fact, the female debtor claimed to be unaware of the Susan Chorman

---

[3]A review of the account information reveals that the female debtor received approximately $76,175.00, from the Susan Chorman DBA Account between January 1, 2007 and March 31, 2008.  Illustrative of the female debtor's involvement with the male debtor's scheme and business operations is a check, issued on September 21, 2007, from the Susan Chorman DBA Account to Mercedes Benz of Cary in the amount of $6,648.08 and numerous checks issued to Branch Banking & Trust Company, which the female debtor acknowledged were payments on the debtors' personal residence.

DBA Account in her deposition.  The existence and extent of the female debtor's involvement and the existence of the Susan Chorman DBA Account would have not been uncovered, if the plaintiffs had not received information from a third party.  The female debtor is not entitled to judgment as a matter of law because a genuine issue of material fact exists as to whether the default judgment against the debtors and Mid-Carolina in the Superior Court of Wake County, to which the plaintiffs were awarded damages in the sum of $474,474.00 plus interest and attorney's fees in the amount of $3,070.00, is nondischargeable under § 523(a).

## CONCLUSION

Based on the foregoing, the motion for summary judgment in favor of the female debtor is **DENIED.**

## END OF DOCUMENT

-8-